SARGENT v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, *Appellant.*

Division One, February 27, 1893.

1. **Pleading:** SPECIAL DEFENSE: GENERAL DENIAL. Matters of defense specially pleaded are properly stricken out where they are admissible in evidence under the general denial.

2. **Negligence:** RAILWAY: LIGHTS AT PLATFORM: PASSENGERS. It is the duty of a railway company to furnish lights at its station platforms during the arrival and departure of trains in the night time sufficient to guide the steps of passengers using ordinary care.

3. ———: ———: ———: ———. Passengers should, under such circumstances, look where they are stepping and be observant of what is going on around them.

4. ———: ———: ———: ———: INSTRUCTIONS. Where the negligence declared on by the plaintiff is the failure of the company to light its platform properly and its permitting mail bags to be thrown upon it over which plaintiff stumbled and fell, and the company relies on plaintiff's contributory negligence as a defense, it is error to instruct the jury that it was not plaintiff's duty to anticipate obstructions on the platform, that she had the right to believe that the platform was safe and that if she did not discover the mail bags, and the company's officers and servants failed to warn her of them, then she was not guilty of negligence.

5. ——: ——: ——: ——.  Where mail bags are customarily thrown from the cars upon the platform over which passengers are expected to pass, it is its duty to guard against accidents caused by passengers stumbling over such bags in the dark even though the bags are thrown out by postal clerks in the service of the postoffice department.

6. **Supreme Court Practice:** DEATH OF PARTY AFTER SUBMISSION. Where a party to a suit pending an appeal dies after its submission to the court, the judgment may be entered as of the day of submission.

*Appeal from the Crawford Circuit Court.*—Hon. C. C. Bland, Judge.

REVERSED AND REMANDED.

*E. D. Kenna* and *L. F. Parker* for appellant.

(1) The court erred in striking out the special defense set up in the answer. *Laflin v. Railroad,* 106 N. Y. 136; *Railroad v. Arnold,* 84 Ala. 159.   (2) *First.* An agreement to admit that the absent witnesses named in an application for a continuance would, if present, testify to the facts set out in the application, concedes the sufficiency of the application. Revised Statutes, 1889, sec. 2127, p. 557; *State v. Loe,* 98 Mo. 609.   And the court having made a finding on the question of diligence, this court will not examine that question. *State v. Warden,* 94 Mo. 648; *State v. Berkley,* 92 Mo. 42.   *Second.* Though the matter of passing upon applications for a continuance is largely in the discretion of the trial court, yet this discretion is not a mere whim, but a judicial discretion soundly exercised; and if it be abused it is sufficient ground for reversal, and where, as in this case, a palpable injustice has been done by permitting a party to violate a solemn agreement, and that without any notice to the opposite party till the jury is impaneled, that alone ought to reverse the case.   (3) The loss of lucrative business by

the plaintiff's daughter was not the proximate result of the injury, and it was not a proper element of damage. *Stephens v. Railroad.* (4) There having been no evidence that it was the custom to throw the bags at the place they were thrown on the night of the injury, or anywhere in the pathway used by passengers, or that any employe of defendant knew they were there on that night, it was error to submit the question of custom to the jury, and the fourth and twelfth instructions should have been refused, and the seventeenth and twentieth instructions should have been given. *Muster v. Railroad*, 61 Wis. 325; *Bank v. Overall*, 16 Mo. App. 510; Affirmed 90 Mo. 410; *State v. Bailey*, 57 Mo. 131; *Musick v. Railroad*, 57 Mo. 134. (5) It is error to give instructions which comment on portions of the evidence, and the first, sixth and seventh instructions should have been refused. *Leeser v. Boekhoff*, 33 Mo. App. 223; *Weil v. Schwarts*, 21 Mo. App. 375; *Jones v. Jones*, 57 Mo. 138; *Spohn v. Railroad*, 87 Mo. 74. (6) *First.* A railway company is not an insurer of its passengers, and the second, third, sixth and eighth instructions should have been refused. *Renneker v. Railroad*, 20 S. C. 218; *Pennsylvania Co. v. Marion*, 104 Ind. 239; *Napheys v. Railroad*, 90 Pa. 135; *Gilson v. Railroad*, 76 Mo. 282. *Second.* The question of negligence was one for the jury, and the court should not have declared "the failure to provide sufficient lights to enable its passengers to leave its premises in safety" to be negligence *per se. Patten v. Railroad*, 32 Wis. 525. (7) An instruction which assumes as proven any fact in issue is erroneous, especially when there is no evidence whatever as to any of the facts so assumed to be proven. *Duke v. Railroad*, 99 Mo. 347; *Reed v. Railroad*, 57 Iowa, 23; *Eckerd v. Railroad*, 70 Iowa, 353; *Peck v. Ritchey*, 66 Mo. 114. (8) When a passenger has safely alighted from a train and is once on *terra*

*firma* a railroad company is no longer required to exercise that high degree of care which is required while such passenger is in the position of hazard occupied while on a moving railroad train, and is only required to exercise such care as a reasonable man would exercise under like circumstances, and the nineteenth instruction should have been given. *Kelley v. Railroad*, 112 N. Y. 443; *Railroad v. Brigham*, 29 Ohio St. 374; *Moreland v. Railroad*, 141 Mass. 31.

*E. Y. Mitchell* and *S. A. Haseltine* for respondent.

(1) The court did not err in striking out part of defendant's answer; the same matter was competent under the general denial. (2) The court did not err in the matter of granting a continuance; such matter rests in the sound discretion of the court and will not be disturbed except in case of its gross abuse. *King v. Brace*, 40 Mo. 222; *Blair v. Railroad*, 89 Mo. 383. (3) Plaintiff's statement as to her pain and suffering was competent as original evidence. 1 Greenleaf on Evidence, sec. 102; *Squires v. Chillicothe*, 89 Mo. 227. (4) The instructions given are more favorable to defendant than it was entitled to have. 2 Redfield on Railways, p. 246; *McDanal v. Railroad*, 26 Iowa, 145; *Garnar v. Railroad*, 100 Mass. 215; *Moonsy v. Ferry Co.*, 47 Mo. 521; *Stafford v. Railroad*, 22 Mo. App. 333; *Chance v. Railroad*, 10 Mo. App. 351. Throwing the United States mail bags upon the platform is negligence for which the railroad company is responsible; they take the contract to carry the mail, run the engine and start and stop the trains, and it is as much their duty to keep the mail bags out of the way as it is express matter. Revised Statutes, sec. 2582; see Patterson's Railway Accident Law, sec. 253, 255; *Snow v. Railroad*, 136 Mass. 552; *Carpenter v. Railroad*, 97 N. Y. 494;

Wood on Railway Law, sec. 1138, and note 4; sec. 310, pp. 1163, 1164, 1165 and 1166; Hutchinson on Carriers [2 Ed.]secs. 516, 517, 518, p. 500.

BLACK, P. J.—Plaintiff was a passenger on the defendant's road from St. Louis to Cuba Junction on the night of October 18, 1888.   In her effort to leave the station at the place of her destination, she stepped upon or against some mail bags, and was thereby thrown down and injured.

The defendant answered by way of a general denial, contributory negligence, and as a third defense alleged that Cuba Junction was a small village containing only two hundred and fifty inhabitants; that it had but few streets, which were without lights of any kind; that at the time of the accident there were lamps burning in the station-house; that the station-house and platform thereto were ample for the business transacted at that place and were constructed with as much care as was usual on well regulated railroads.   These and other like matters are set out at great detail.   On motion of the plaintiff, the court struck out this third defense.

1. While it was the duty of the defendant to light its station and platform on the arrival and departure of trains, the character and the extent of the lights must depend upon the character and extent of the business transacted at the particular place.   As the village had no gas or electric lights the defendant was not bound to supply its station with such lights.   Lights which would be sufficient at a station like this would be wholly inadequate at a large station.   All such circumstances were proper matters to place before the jury in solving the question whether the defendant failed to properly light the platform; but they are matters of evidence only and not facts to be pleaded.   All of the

facts set out in this defense which have any relevancy whatever could be given in evidence under the general denial. The motion was therefore properly sustained.

2. The depot platform at Cuba is about two hundred feet long, and is a substantial structure. There is no evidence showing or tending to show that it was out of repair or defective in construction. The train on which plaintiff was a passenger ran in from the east and stopped about a car length further west than usual. With the assistance of the car porter, plaintiff got off the car at a point about six feet west of the west end of the station-house. She then started east on the platform to the east end of it, where there was an omnibus in waiting. She had taken but a few steps when she tumbled over some mail bags lying in her pathway, which had been thrown from the postal car attached to the train. The witnesses all agree that it was a very dark night. There were no lights on the platform save three or four lanterns in the hands of persons who were moving about from place to place. There was a bay window to the station-house looking out on the platform, and two lighted lamps on the inside, but these lamps gave no light on the platform because of the window shades. The evidence tends to show that the car window blinds were also closed, so that there was little or no light from the car.

It appears three or four other persons came in on the same car. A Mr. Lewis and his wife were in advance of the plaintiff. He stumbled over the bags, but he says he was looking towards the omnibus and not where he was stepping. His wife seems to have seen the bags just as he stumbled. He says he passed on and then turned around and saw Mrs. Sargent fall, and that he could see the bags from where he was then standing. Another lady who got off at the east end of the station-

house says she waited for the crowd to get away; that she saw the sack; that it was lighter sometimes than at others, but she could see the sacks at all times. The plaintiff had a basket in her hand and two or three small bundles at the time she fell.

Objections are made to some of the eight or nine instructions given at the request of the plaintiff, because they do not properly define the duty of the defendant or that of the plaintiff. To an understanding of these objections we set out the instructions, omitting the recitals that plaintiff was a passenger on the train.

"1. If the plaintiff started the usual way across said platform to the hotel 'bus, it was not her duty while so going to the hotel 'bus to expect and anticipate obstructions on the platform."

"6. If the plaintiff in attempting to go to the 'bus, east of the depot, did not discover the mail bags on the platform, which she had the right to believe was safe and free from obstructions, and the officers and servants of said defendant company failed to warn her of such obstructions, and that she fell over the same and injured herself, then she was not guilty of such negligence as would prevent her recovering in this cause, and your verdict will be for plaintiff; provided you further find that the platform was not sufficiently lighted to enable plaintiff to have seen and avoided the obstruction by the use of customary care on her part."

7. (This instruction states among other things that the plaintiff "had the right to assume that the platform was unobstructed.")

"8. If the mail bags were permitted to remain upon said platform in the passage-way to said 'bus, and plaintiff was tripped up by them and fell upon said platform and was injured, and that before she fell she did not see said mail bags, and had no warning that

the said mail bags were in the said passage-way, plaintiff was not guilty of contributory negligence, and you will find for plaintiff, provided you further find that the platform was insufficiently lighted to enable plaintiff to have seen said mail bags by the use of ordinary care."

There can be no doubt but it is the duty of a railroad company to furnish lights at its station platforms during the arrival and departure of trains at night, sufficient to safely guide the steps of its passengers, the passengers using ordinary care. Hutchinson on Carriers [2 Ed.] secs. 518, 519; *Fordyce v. Merrill*, 5 S. W. Rep. 329; *Buenemann v. Railroad*, 20 N. W. Rep. 379. The real question over these instructions is whether they properly define the duty of the plaintiff as to the use of ordinary care. There are cases which seem to impose upon the carrier of passengers the same high degree of care in respect of their stations, platforms and ways of ingress and egress that is imposed upon them in respect of their carriages, machinery and tracks; and there are other cases which call for a less degree of care, that is to say, such care only as a prudent person would use under like circumstances and in view of the danger to be apprehended. The ground upon which this rule is placed is that the degree of care required is not based alone on the relation of carrier and passenger, but is in part measured by the consequences which flow from the want of care in the use of dangerous agencies, and hence it is that such high care is demanded in respects of cars, tracks, engines and the like. *Moreland v. Railroad*, 141 Mass. 31; *The Pennsylvania Co. v. Marion*, 104 Ind. 239; *Kelly v. Railroad*, 112 N. Y. 443.

It is out of place here to do more than allude to these rules; for there is no evidence showing or tending to show that the platform itself was in any way defec-

tive.    The negligence counted upon by the plaintiff is a failure to properly light the platform and in permitting the mail bags to be thrown upon it, and the defendant counts upon contributory negligence.    With these as the only issues before the jury, was it proper to make the following declarations in the instructions:    That it was not the duty of the plaintiff to expect and anticipate obstruction on the platform; that she had the right to believe the platform was safe and free of obstructions; that if she did not discover the mail bags, and the officers and servants failed to warn her of such obstructions, then she was not guilty of negligence; and that she had the right to assume that the platform was unobstructed?    We think not.    These declarations can lead to no other conclusion than this, that the plaintiff had the right to move along unmindful and oblivious to anything that might be in her pathway, until notice brought to her by some servant of the defendant.    Such cannot be the law.    Persons going to and from trains must know that depots are more or less crowded on such occasions, that at small stations like this baggage is handled on trucks on the platform, and that there is always more or less confusion.    Common prudence dictates that passengers should at such times and places look where they are stepping and be observant of what is going on around them.    The care of the passenger must be suited to the surroundings, for this is but ordinary care.

It is true these instructions have, coupled with the statements before mentioned, a proviso to the effect, that to recover, plaintiff must have been in the exercise of ordinary care, but the effect of the proviso is destroyed by what precedes it.    Thus the sixth instruction asserts that she had the right to believe the platform was free of obstructions, and, if she did not see the mail bags and was not warned of their presence,

she was not negligent and should recover, provided the platform was not properly lighted to enable her to see the bags by the use of customary care. Now if there was any want of ordinary care on her part it was in not looking where she stepped. The substance of the instruction as applied to the evidence comes to this: It is first asserted that she was not bound to look where she was stepping, and was not negligent because of a failure to look; and it is then asserted that it was her duty to be on her guard. While saying she was in duty bound to use ordinary care, 'the instruction at the same time takes out of the case every element in it going to show want of such care. It is contradictory of itself, confusing and furnishes no guide whatever as to the duty of the plaintiff. The want of care on the part of the plaintiff should be submitted to the jury as a question of fact to be decided from all the circumstances; and this these instructions do not do. They speak of ordinary care on her part, but at the same time exclude from the case the very elements which go to show want of such care. There is but one theory on which this judgment can stand, and that is this, that there was no want of care on the part of the plaintiff. This we cannot say because there is evidence tending to show want of such care, thus making it a question of fact for the jury to determine.

3. The fourth instruction given at the request of the plaintiff, relieved of matters not now material, states that if it was customary for the defendant's passenger-trains to carry mail, and the defendant's servants knew or might have known it was customary to throw mail bags upon the platform, and these servants neglected to remove said mail bags, and failed to have such lights upon the platform as were necessary to enable plaintiff to pass in safety, and she fell and was

injured without fault on her part, the finding should be for her.

The objection to this instruction is that there is no evidence to support it.

In *Muster v. Railroad*, 61 Wis. 326, the plaintiff was at work on a scaffold, putting up cornice on a depot building. A postal clerk threw a mail bag from a passing train, which struck one of the supports of the scaffold knocking it down and injuring the plaintiff. The evidence was all to the effect that mail bags were usually discharged some two hundred feet west of the depot, and there was no evidence that a mail bag had ever before been thrown off at the depot. Under this state of the evidence it was held that the company was not chargeable with notice that such a thing was likely to occur, and hence the company was not bound to guard against accidents from such a cause.

In *Carpenter v. Railroad*, 97 N. Y. 494, the plaintiff went to a depot to take an approaching train. As the cars passed him a postal clerk threw a mail bag on the platform, which struck the plaintiff. The defense was that the postal clerk was in the employ of the United States and not in the employ of the company. The proof showed that the practice of thus discharging mail bags had prevailed for a long time. In view of this evidence the court held that the company was chargeable with notice that mail bags were likely to be thrown off in the same manner and under the same circumstances at the arrival of any postal car. Says the court: "By this knowledge the defendant was brought fairly within the rule which enjoins care, not only on the part of itself and its servants, but also like care in preventing injury from the careless or wrongful act of any other person whom it permits to come upon its premises. The occupants of the postal car are no

exceptions to this rule; they were not strangers or uninvited."

And in another like case it was said, "There was evidence in the case tending to show that mail bags had not unfrequently been thrown from this car in such a way as to strike upon the platform where the plaintiff stood; and if this evidence was believed the court was justified in inferring that the defendant knew, or, in the exercise of proper care, ought to have known this. It was within the power of the defendant to prevent this practice of throwing out mail bags, if in no other way, by withholding the use of the car, or by stopping the train at the station." *Snow v. Railroad,* 136 Mass. 552.

Here, one witness testified: "It is the custom to throw them (the mail bags) off at the west end of the platform. The mail bags are taken by the night operator into the depot after the train leaves. He gets his pay from the company. They usually come off west of the depot." Another witness says: "They throw mail sacks off on the platform. The mail bags [meaning those over which the plaintiff fell] were west of the depot and west of the turn which goes to McClay's." Other evidence is to the effect that the postal clerks are under the control of the United States and not of the defendant.

This evidence tends to show that usually these bags were thrown off on the west end of the platform, and not at the particular place on it where they were thrown off on the night in question, but the difference could not have been more than fifty feet and is immaterial. The practice had been to throw them on this platform provided for passengers, and passengers had the right to use any part of it. As the passenger platform was used for the purpose of discharging the mail bags thereon, it was the duty of the defendant to

guard against accidents from that cause, and this, too, as to every part of the platform open to the use of passengers. At the time in question the train stopped further west than usual, and the mail bags appear to have been discharged further east than usual, and as a result they obstructed the passage. It is apparent that just such a state of affairs was likely to occur at any time, and it was the duty of defendant to guard against accidents therefrom.

This case is in its facts unlike that cited from 61 Wisconsin, and comes clearly within the rule of the other cases cited on the same subject. For the error before mentioned the judgment is reversed and the cause remanded. It having been suggested that the plaintiff has died since this cause was submitted in this court, the judgment will be entered as of the day of the submission, leaving it to the parties to take such proceedings in the trial court as they may be advised is proper. All concur.