YOUNG v. YOUNG et al., Appellants.

### Division One, December 17, 1901.

1. **Judgments**: AMENDMENT NUNC PRO TUNC: PAROL EVIDENCE: CALIFORNIA RULE. Parol testimony is incompetent to amend judgments. *Nunc pro tunc* judgments can not be entered unless there is something of record which furnishes "a basis to amend by." And there is no difference in the rule in this State and that of California in this respect.

2. ———: ANNOUNCEMENT OF FINDING: DEATH: DIVORCE: DECREE. After a hearing of all the evidence in a divorce proceeding the court announced that plaintiff would be granted a divorce and stated that in signing his findings he would fix the amount that should be paid by plaintiff for the support of his child, which he said he would award to defendant, and also, her attorney's fee, and that his findings would be made on a certain day later, but before they were filed the plaintiff died, but the court, nevertheless, on and after that day as of the day the announcement was made, entered a decree annulling the marriage. There was nothing at the time in the papers on file, nothing of record, nothing in the minute book or judge's docket which could be looked to as a basis for a decree *nunc pro tunc*. *Held*, that the decree was invalid and void. *Held*, also, that any recital made in a decree entered after the death of a party could not be self-serving so as to afford a basis for a *nunc pro tunc* entry.

3. ———: FINAL DECREE: FUTURE FINDING. So long as the finding of the court on any material matter is left open for a future determination, there can be no final decree.

4. ———: ———: ———: MINISTERIAL ACT OF THE CLERK. If the announcement from the judge of what the decree will be does not amount to a judicial determination of the issues, there is no room in the case for the doctrine that the entry of the decree is the ministerial act of the clerk.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Frank M. Estes* and *Davis Biggs* for appellants.

(1)  A judgment of divorce becomes valid when pronounced by the court, and it need not be in writing or signed by the judge.  In re Estate of Cook, 77 Cal. 220; s. c., 83 Cal. 415; Fox v. Hale & Norcross Silver Min. Co., 108 Cal. 478; Holt v. Holt, 107 Cal. 258; Franklin v. Merida, 50 Cal. 289.  (2) The plaintiff, Lulu Young, is not the lawful widow of Charles H. Young, the *nunc pro tunc* decree of divorce being valid under the laws of California.  In re Estate of Cook, supra; Fox v. Hale, etc., supra.  The decree of divorce being valid, the court was without jurisdiction to vacate and set aside said decree after the death of Charles H. Young.  The California court did not have the authority and power to vacate its decree, which it had entered *nunc pro tunc* after the death of Charles H. Young, without proper notice.  Code of Civil Procedure of California, sec. 73; Kirschner, Admr., v. Dietrich, 110 Cal. 502; Scammon v. Bonslett, 118 Cal. 93; People v. Green, 74 Cal. 400; Bostwick v. McEvoy, 62 Cal. 502; Wharton v. Harlan, 68 Cal. 422; Freeman on Judgments, sec. 72; Grier v. Jones, 54 Ga. 154.  (3) In an action upon a judgment rendered in a sister State, the jurisdiction of the court may always be inquired into.  Want of jurisdiction may be shown as to subject-matter or parties, although the record may recite facts necessary to give the court jurisdiction.  Eager v. Stover, 59 Mo. 89; Napton v. Leaton, 71 Mo. 358; Bradley v. Welch, 100 Mo. 258.  (4) Under the Constitution of California, terms of court are abolished, the courts are always open, and the sessions are continuous.  Code of Civil Procedure, secs. 73, 74; In re Gammon, 68 Cal. 545. (5)  Findings of fact required under California statute may be waived by stipulation signed by counsel duly authorized. Code of Civ. Pro. of California, sec. 634.

*Judson & Green* for respondent.

Vol 165 mo—40

(1) It appears from the facts in evidence that the said superior court of Los Angeles county was without jurisdiction or power to render and file a judgment or decree of divorce in said cause, after the death of Charles H. Young, and had no jurisdiction to order the same entered in its judgment roll *nunc pro tunc* as of September 4, 1897. (a) Because the oral announcement of the court on September 4, and its directions to plaintiff's attorneys about the preparation and submission of findings of fact and a decree of divorce, were not the rendition of a final judgment in favor of plaintiff. Broder v. Conkling, 98 Cal. 360; Harvester Works v. Insurance Co., 98 Cal. 559; Crim v. Kessing, 89 Cal. 478; San Joaquin Land Co. v. West, 99 Cal. 345; Saxton v. Smith, 50 Mo. 490; Belkin v. Rhodes, 76 Mo. 643. The language used by the court at that time, as shown by defendant's evidence, clearly indicates that the court reserved its judgment until the submission of findings of fact. Broder v. Conkling, 98 Cal. 360. (b) Because under the California code a final judgment is not rendered in a case which is tried by the court without a jury, until the court has made up and filed with the clerk its written findings of fact and conclusions of law, except in cases of default, where no written findings of fact are required by the statutes. California Code of Civil Procedure, secs. 622, 633 and 634; Crim v. Kessing, 89 Cal. 478; Connolly v. Ashworth, 98 Cal. 205; San Joaquin Land Co. v. West, supra; Mace v. O'Reilly, 70 Cal. 231. (c) Because this action abated immediately upon the death of Charles H. Young, and a judgment can not be entered *nunc pro tunc*, after the death of one of the parties. to a cause, in an action which does not survive, unless a final judgment had been completely rendered in the cause during the lifetime of the parties, and unless nothing remains to be done except the ministerial act of the clerk in entering on the judgment roll the final judgment so completely rendered by the court during the lifetime of the parties. In re Cook, 77 Cal. 229; Kirschner v.

Dietrich, 110 Cal. 502. (d) Because a *nunc pro tunc* entry or amendment must always be based upon record evidence, and the record evidence did not show a waiver of finding of fact by the parties on September 4, 1897. On the contrary, the minutes of the court's proceedings on that day, if correctly entered, must have shown that such findings of fact were not waived by the parties, but were ordered prepared by the court, and to be thereafter submitted to him for approval, and that the court reserved its judgment until the submission of these findings of fact. Hegelar v. Henckel, 27 Cal. 491; Hansbrough v. Fudge, 80 Mo. 307; Witten v. Robinson, 31 Mo. App. 525; Danforth v. Railroad, 123 Mo. 196; Bryant v. Jackson, 80 Mo. 318. (2) The said court was therefore without jurisdiction to render any judgment in said case on December 10, 1897, and the said judgment so rendered and entered *nunc pro tunc* as of September 4, 1897, was and is absolutely null and void, and the court which rendered it could set it aside and relieve Mrs. Young from its prejudice at any time thereafter, either of its own motion, or at her request, without notice to any one. People v. Greene, 74 Cal. 400; Broder v. Conkling, 98 Cal. 360; Mace v. O'Reilley, 70 Cal. 231; McNair v. Biddle, 8 Mo. 257; Napton v. Leaton, 71 Mo. 358; Abbott v. Sheppard, 44 Mo. 273. (3) If said judgment and decree was and is null and void for want of jurisdiction in said court to render it, it is without force or effect in this case, whether or not it has ever been properly set aside and vacated by the court which rendered it. Higgins v. Peltzer, 49 Mo. 152; Marx v. Fore, 51 Mo. 69; Eagers v. Stover, 59 Mo. 87. (4) If the said court had any power or jurisdiction to order the entry of a *nunc pro tunc* judgment on December 10, 1897, it must necessarily have had power to vacate and set aside such order for good cause, upon notice to those parties at whose request it had been made and entered. Certainly it could set aside the stipulation waiving findings of

fact, upon which the right to enter a *nunc pro tunc* judgment depended.

MARSHALL, J.—This is an action for the partition of certain land in the city of St. Louis, being a part of the estate of Joseph B. McCullagh. The plaintiff claims as widow of Charles H. Young, who was a nephew of McCullagh. The controversy turns upon whether the plaintiff is the widow of Charles H. Young, and the determination of this question depends upon the proceedings in a suit for divorce in the courts of the State of California, wherein Charles H. Young was the plaintiff and Lulu Young, the plaintiff herein, was the defendant.

The record before this court shows the facts bearing upon the divorce case to be as follows: The trial of the divorce case was begun by the judge of the California court, a jury being waived, on August 23, 1897, and completed and the case submitted on September 4, 1897, and thereupon the judge announced *orally* from the bench, that he would grant a divorce to the plaintiff therein, Charles H. Young, but that owing to Young's ill-health, the custody of the child would be awarded to the mother, the defendant therein. A discussion then arose as to the amount to be paid by the father for the support of the child, and the judge said he would fix that in signing the findings. The defendant's counsel then asked for an allowance as attorney's fees. The plaintiff's counsel denied the power of the court to make any such allowance. The judge said he would fix that also when he signed the findings, and directed the attorneys for Young to prepare findings and submit them to him on the seventh of September. When the matter was again taken up on the seventh of September, it was suggested to the court that Young had died early that morning. The judge was of opinion, and Mrs. Young's attorneys contended, that the action abated by the death of Young. On the other hand, Young's

attorneys contended that the court had power to enter the divorce decree *nunc pro tunc* as of September 4th. The matter was laid over for further argument until September 17th. Between the seventh and the seventeenth of September, Mrs. Young instructed her attorneys to make no further opposition to the decree being entered, as the will of Young had made suitable provisions for their child, and that was her principal object in contesting the divorce case.

The power of the court to enter a decree *nunc pro tunc* was fully argued on the seventeenth of September; the counsel for Mrs. Young, acting against her instructions, still contended that the court had no such power and that the action had abated, and it appearing that no findings had been made, as the Code of California requires when a case is tried by the court, without a jury (secs. 632, 633, Code of Civil Procedure of California), the judge suggested that if Mrs. Young's attorneys would waive a finding, it would be sufficient under section 634 of the Code. Counsel for both parties then signed a written waiver of the filing of findings, and dated it as if it had been signed on September 4th, but it was not filed until December 11th. The court then took the matter under advisement until December 11th, when he entered a decree of divorce in favor of Young, gave Mrs. Young the custody of the child, and allowed her attorneys a fee of five hundred dollars, and entered the decree *nunc pro tunc* as of September 4, 1897.

These matters appear from the testimony of the several attorneys in the case. The only evidence of record pertaining thereto is embraced in the decree, which recites that the trial began on the twenty-third of August and was completed and the cause taken under advisement on fourth of September, and that the decree was entered on December 11th as of September 4, 1897.

Thereafter, on January 20, 1898, upon motion of new counsel for Mrs. Young, the former counsel for Mr. Young

being present at the hearing, the court vacated the decree of divorce, and found that the waiver of findings was unauthorized by Mrs. Young, and that the court had no jurisdiction to enter the decree of divorce, because the action abated by the death of the plaintiff, Young, before the decree was entered. Thereupon Mrs. Young instituted this suit in partition against McCullagh's heirs and his administrator.    The circuit court rendered judgment for the plaintiff, and the defendants appealed.

I.

The decisive question in this case is the power of the California court to enter a divorce, *nunc pro tunc,* after the death of the plaintiff in that case.

In Railroad v. Holschlag, 144 Mo. l. c. 256, this court, speaking through WILLIAMS, J., said: "It is not disputed, nor can it be, that the settled law of this State is that entries *nunc pro tunc* can only be made upon evidence furnished by the 'papers and files in the cause or something of record, or in the minute book or judge's docket' 'as a basis to amend by.' Gamble v. Daugherty, 71 Mo. 599."

The parol testimony introduced in this case was wholly incompetent and should have been excluded.    Judgments of courts can not be supported by parol testimony, and judgments *nunc pro tunc* can only be entered where there is something of record which furnishes "a basis to amend by."    But even if such evidence was admissible, it would be unavailing to support the defendant's contention in this case, for it shows that prior to September 7th, the California court had arrived at no final determination of the divorce case, but on the contrary expressly reserved the question of the allowance for the support of the child and for attorney's fees, until the seventh of September, and that the plaintiff died before the court convened on the seventh, and before any conclusion as to these questions had

been reached.    So that it plainly appears that no judgment had been determined upon, much less announced, or any memorandum made, before the action abated by the death of the plaintiff therein, Mr. Young.    In that race for the dissolution of the marriage bonds the "grim reaper" distanced the "divorce mill."

There was nothing among the papers and files in the cause, nothing of record, nothing in the minute book or judge's docket, that could be looked to as a basis for a decree *nunc pro tunc*.    The only thing that appeared in this way was what the decree itself, entered on December 11th, shows, and that is, that the trial began on August 23d and was completed on September 4th, and the case was then taken under advisement and the decree was entered on December 11th.    This shows no order, decree or judgment made or determined upon prior to Young's death.    But as this decree was entered after his death, it could not be self-serving so as to afford a basis for a *nunc pro tunc* entry.    It is true that the testimony of one of the counsel (Mr. Marble) shows that when the matter was being discussed on the eleventh of December, and the allowance to the child was being discussed: "The court looked at the decree, and asked as to the provisions of the order of September 4th, whereupon I had the clerk of the court bring in the minutes of that day, and read aloud the entry."    From which it may be argued that on September 4th, an order of some kind was made, and entered on the minutes of the clerk on that day, but no such order appears in this record.    If the fact be as stated by Mr. Marble, a certified copy of the entry on the minutes should have been introduced in evidence in this case, and it could then have been seen whether it was sufficient to warrant an entry of a decree *nunc pro tunc*.    Even the parol testimony does not show the character or terms of the order on the clerk's minutes.    If it was, as the other parol testimony shows the proceedings then had were, it would not show any final judgment, for the two matters above referred to were left open for further discussion

on September 7th, and until they were determined there could be no final judgment. However, as above pointed out, such matters lying wholly in parol, so far as this record shows, cannot be resorted to in aid of the entry *nunc pro tunc*.

Counsel for defendant, however, contend that this matter must be determined as of the laws of California, and that under the laws and decisions of that State the court had the power to enter the decree *nunc pro tunc,* because on September 4th, the court announced *orally* that it would grant the divorce, and that the entry of the decree is a mere ministerial act which did not affect the judicial determination of the case.

If the record showed any judicial determination of the divorce case before Young's death, the mere fact that the clerk wrote the judgment upon the judgment rolls after Young's death would not affect the judgment. But there is no evidence, record or otherwise, in this case, of any judicial determination of the divorce case before Young's death. What took place on September 4th, did not amount to a judicial determination. Therefore, there is no room in this case for invoking or applying the doctrine as to the ministerial act of the clerk.

This leaves for consideration the contention that under the laws and decisions in California an oral announcement of the court, which of course can only be proved by parol testimony, is a sufficient basis for a *nunc pro tunc* decree. In support of this contention counsel cite In re Estate of Cook, 77 Cal. 220; Ibid., 83 Cal. 415; Fox v. Hale, etc., Co., 108 Cal. 478; Holt v. Holt, 107 Cal. 258; Franklin v. Merida, 50 Cal. 289.

In California "terms of court" are abolished and the courts are always open. [Code Civil Procedure, secs. 73 and 74.] The Code of that State further provides as follows:

"Sec. 632. Upon the trial of a question of fact by the Court, its decision must be given in writing and filed with the

clerk within thirty days after the cause is submitted for decision.

"Sec. 633. In giving the decision, the facts found and the conclusions of law must be separately stated. Judgment upon the decision must be entered accordingly.

"Sec. 634. Findings of fact may be waived by the several parties to an issue of fact.

"1. By failing to appear at the trial.

"2. By consent in writing filed with the clerk.

"3. By oral consent in open court, entered in the minutes."

Under these provisions, there was no decree on September 4th, because there was no written finding of fact, and the waiver was not signed until December 11th, which was after Young's death.

Those provisions of the Code have undergone judicial construction in that State, with the result that the rule has been established that there can be no final judgment in a case tried by the court without a jury, until the court has made up and filed with the clerk its written findings of fact and conclusions of law, except in cases of default when no findings are required, unless the parties waive a finding. [Crim v. Kessing, 89 Cal. 478; Connolly v. Ashworth, 98 Cal. 205; San Joaquin Land Co. v. West, 99 Cal. 345; Mace v. O'Reilley, 70 Cal. 231.] So that, as in the divorce case there was no finding, and no waiver thereof during Young's life, it follows that there was no judgment before the suit abated by his death.

An examination of the cases cited by defendant's counsel shows that there is no difference between the rule in this State, above pointed out, and the rule in California, as to the necessity of having something in the record as a basis for a decree *nunc pro tunc*.

In re Estate of Cook, 77 Cal. 220, Ibid., 83 Cal. 415, was a suit for a divorce. The defendant made default, which, as shown, dispensed with a finding of fact. The court ordered a

decree of divorce on April 23, 1880, and the order was entered on the minutes of the court by the clerk, but the clerk did not enter the judgment on the rolls until after the death of the defendant. The court ordered the judgment to be entered *nunc pro tunc* as of April 23d. This was proper as the minutes furnished the record basis for the entry.

Fox v. Hale, etc., Co., 108 Cal. 478, was not a suit for a divorce, but was an action that survived the death. The court held that a court has an *inherent* right to enter a judgment *nunc pro tunc,* and that the parties can not be prejudiced by the delays of the court in rendering a judgment, but that: "Where a defendant has died after a cause has been tried and finally submitted to the court for its judgment, and before the filing of findings and entry of a decree, the court has power to order its findings to be filed *nunc pro tunc,* and its judgment therein to be entered *nunc pro tunc,* as of a date prior to the death of the defendant." This decision must be read in the light of the facts presented in that case for decision, which were that the case was tried and submitted on May 3, 1892, and on May 26th "the court filed a written opinion announcing its conclusions, and directing counsel to prepare findings and a decree in accordance with said opinion." The defendant died June 2, 1892, before the findings were filed or the decree entered, and the court ordered its findings and judgment to be entered *nunc pro tunc* as of May 26th. It is thus apparent that there was record evidence (the written opinion of the court announcing its conclusions) which afforded a basis for a *nunc pro tunc* finding and decree.

Holt v. Holt, 107 Cal. 258, was an action for a divorce. The case was tried by jury, who returned a verdict, upon special issues, that the parties were never married. The court orally gave judgment for the defendant and dismissed the case. The clerk entered the order on the minutes on the same day, but did not enter the judgment on the rolls. Afterwards, the plaintiff moved to have the case docketed for hearing because

no judgment had ever been entered on the rolls. The court overruled the motion and entered a decree *nunc pro tunc*. It was held by the Supreme Court that the action of the court was an adoption of the verdict and that a finding of fact was not necessary, and that the *nunc pro tunc* decree was proper. It will be observed that all the parties were still alive; and that the suit had not abated. Here, also, there was sufficient record evidence to afford a basis for a *nunc pro tunc* decree.

Franklin v. Merida, 50 Cal. 289, was an action in ejectment. The case was tried by the court without a jury. "On October 2, 1869, the court made the following order for judgment in favor of the plaintiff, and it was entered by the clerk in his book of minutes of the court: 'This cause having been heretofore tried before the court without a jury, and submitted for consideration and decision, it is now ordered that plaintiff in this cause have judgment against the defendants for possession of the premises described in the complaint, together with costs of suit.' " The clerk did not enter the judgment on the rolls, but on October 1, 1874, the clerk entered the judgment on the rolls and on the same day issued a writ of restitution, which was executed on October 6, 1874. On October 7, 1874, the successors to the defendant moved to be restored to the possession on the ground that the plaintiff had died before the judgment was entered on the rolls and before the writ of restitution was issued. It appeared, however, that the plaintiff had sold his interest and that the writ was issued at the request of the grantees, and on their motion the court ordered a decree *nunc pro tunc* as of October 2, 1869, and denied the motion of the successors to the defendant to be put back into possession. The Supreme Court sustained the judgment, but instead of putting it on the ground that there was record evidence affording a basis for a *nunc pro tunc* decree, said there was no necessity for such an amendment, as the judgment was *rendered* October 2, 1869, in the lifetime of the plaintiff, although not *recorded* until October 1, 1874, after his death. There was

here also ample record evidence for a judgment *nunc pro tunc.*

It thus appears, that when analyzed, there is no difference between the rule announced in the California cases and that so tersely and comprehensively stated by WILLIAMS, J., in Railroad v. Holschlag, 144 Mo. 1. c. 256, that "entries *nunc pro tunc* can only be made upon evidence furnished by the 'papers and files in the cause, or something of record, or in the minute book or judge's docket,' 'as a basis to amend by.'" Tested by this rule it follows that the divorce case of Young v. Young, abated on September 7th, by reason of the death of the plaintiff, and that at that time no decree had been entered, and that there was no record evidence to justify a *nunc pro tunc* entry of a decree afterwards, and the judgment of the California court was void. Mrs. Young was, therefore, the wife of Mr. Young when he died, and, as his widow, is entitled to maintain this action. No other suggestions of error having been made, the judgment of the circuit court is affirmed. All concur.