**Lisa BAKKER, Personal Representative of the Estate of Mary Louis Baumruk, Petitioner/Appellant,**

v.

**The EMPLOYEE SAVINGS PLAN OF MCDONNELL DOUGLAS CORP., Salaried Plan, et al., Respondents.**

No. 68645.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 13, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 25, 1996.

Application to Transfer Denied April 23, 1996.

Stephen C. Hiotis, Copeland, Thompson & Farris, Clayton, for appellant.

David S. Slavkin, Bryan Cave, St. Louis, for respondents.

GARY M. GAERTNER, Judge.

Petitioner/appellant, Lisa Bakker, personal representative of the estate of Mary Louise Baumruk, appeals from the judgment of the Circuit Court of St. Louis County quashing a consolidated garnishment action directed to the following savings and/or retirement plans in which Kenneth Baumruk had a vested interest: (1) the Employee Savings Plan of McDonnell Douglas Corporation—Salaried Plan, (2) the Employee Savings Plan of McDonnell Douglas Corporation—Hourly East Plan, (3) the Employee Retirement Income Plan of McDonnell Douglas Corporation—Salaried Plan, and the (4) Employee Retirement Income Plan of McDonnell Douglas Corporation—Hourly East Plan (collectively, "the MDC plans"). We affirm.

Mary Louise Baumruk ("wife") commenced a dissolution action against Kenneth Baumruk ("husband") in 1990. On May 5, 1992, husband intentionally shot and killed wife without legal justification at the St. Louis County Courthouse. Trial had begun by that date, but no decree dissolving the marriage and dividing the separate and marital property, nor any findings that the marriage was irretrievably broken, had been entered.

On July 3, 1992, the trial court sustained a motion to intervene filed by Lisa Bakker, wife's daughter and the personal representative of wife's estate ("daughter"). The court also ordered daughter substituted for wife in the dissolution proceeding, in order to obtain a division of the separate and marital property of husband and wife. The court relied on the common law principle enunciated in *Perry v. Strawbridge*, 209 Mo. 621, 108 S.W. 641 (1908), that an intentional killer should not profit from his wrong.

On January 8, 1993, the dissolution action was tried before a different judge. Husband did not appear or object to the proceeding. On January 11, 1993, the trial court entered a decree purporting to dissolve the marriage and divide the separate and marital property. The decree stated in part:

8. That this Court hears this case, and makes its Order entered herein upon such substitution in the above-entitled dissolution action pursuant to this Court's inherent authority under the common law of the State of Missouri to prevent [husband] from profiting from the murder by his own actions of [wife], and further hears and considers this case and makes the Order entered herein as an independent equitable action to set unto the Estate of [wife] her interest in the marital property referred to herein accumulated by [wife] and [husband], and to set aside unto the Estate of [wife] the separate property of [wife] acquired prior to the marriage herein.

The court found the MDC plans to be marital property, awarded all interest in the MDC plans to wife's estate, and ordered that this award be satisfied by means of four attached qualified domestic relations orders ("QDROs").

In February of 1993, daughter filed four separate writs of garnishment upon each of the four MDC plans. The four garnishment actions were subsequently consolidated. The MDC plans, as garnishees, objected to daughter's attempt to execute upon the QDROs. The consolidated garnishment action was submitted to a third judge upon a joint stipulation of facts.

On May 24, 1995, the trial court entered judgment quashing daughter's garnishment action, stating in part:

... the Court hereby finds that it was without jurisdiction to render the Qualified Domestic Relations Orders dated January 11, 1993 ..., and that said Orders are void and of no effect.

The Court further finds that the Employee Retirement Income and Security Act (ERISA) prohibits the assignment or alienation of plan benefits....

Daughter's appeal followed.

As this case was submitted on stipulated facts, our review is limited to determining whether the trial court drew the proper legal conclusions from the facts stipulated. *State Farm Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co.*, 883 S.W.2d 530, 532 (Mo.App. E.D.1994).

Daughter raises two points on appeal. We find her first point, in which she contends the trial court erred in ruling it was without jurisdiction to enter the QDROs, dispositive.

██ Marriages can be legally dissolved in two ways: upon the death of a spouse, or by a court of competent jurisdiction. *In re Marriage of Harms,* 563 S.W.2d 781 (Mo. App.Spfld.D.1978). If either spouse dies prior to the entry of a final judgment, the dissolution proceedings are abated and the court loses jurisdiction. *Winters v. Cooper,* 827 S.W.2d 233, 234 (Mo.App.E.D.1991); *Parkhurst v. Parkhurst,* 799 S.W.2d 159, 161 (Mo.App.E.D.1990).

Wife's death occurred prior to the entry of a decree dissolving the marriage or finding the marriage irretrievably broken. *Contra Fischer v. Seibel,* 733 S.W.2d 469, 472 (Mo. App.W.D.1987). The trial court's jurisdiction over the dissolution proceeding was accordingly abated as of the date of wife's death, and its orders subsequent to that date were void. In particular, the court had no power to substitute daughter as a party to the dissolution. *See Parkhurst,* 799 S.W.2d at 161.

██ Despite the above rules of law, daughter asks this Court to find the trial court did have jurisdiction, based upon Missouri's common law principle that wrongdoers should not be allowed to benefit from their wrongful conduct. Courts will refuse to enforce a spouse's statutory or contractual rights if enforcing those rights would allow the spouse to profit from his or her wrong. *See Perry v. Strawbridge,* 209 Mo. 621, 108 S.W. 641, 642 (1908) (husband who murdered wife cannot take by intestate distribution); *Wells v. Harris,* 414 S.W.2d 343, 346 (Mo. App.K.C.1967) (husband who intentionally killed wife cannot recover proceeds from insurance policies on wife's life); *Baker v. Martin,* 709 S.W.2d 533, 535 (Mo.App.S.D. 1986) (husband who intentionally killed wife cannot take as devisee under wife's will); *Matter of McCarty,* 762 S.W.2d 458, 461 (Mo. App.E.D.1988) (wife who killed husband precluded from taking husband's share of commonly held property).

However, the trial court in each of the preceding decisions had jurisdiction to proceed as it did. The trial court here did not. The courts of this state have never regarded the principle that a wrongdoer should not benefit from his or her wrong as an independent basis for jurisdiction over an otherwise abated dissolution action. Daughter cites decisions from other states which have used this principle as a means to create jurisdiction over an abated dissolution action. *See Drumheller v. Marcello,* 516 Pa. 428, 532 A.2d 807 (1987); *Howsden v. Rolenc,* 219 Neb. 16, 360 N.W.2d 680 (1985); *Jacobson v. Jacobson,* 146 N.J.Super. 491, 370 A.2d 65 (1976).[1] We decline to so hold here. The law is unambiguous: a spouse's death prior to the entry of a decree immediately terminates the court's jurisdiction over a pending dissolution action.

The trial court had no jurisdiction to enter the orders substituting daughter for wife and awarding the MDC plans to wife's estate by means of the QDROs. These orders were therefore void. The court's judgment quashing daughter's garnishment action was proper on this basis and we need not address daughter's second point.

The judgment is affirmed.

SMITH, P.J., and RHODES RUSSELL, J., concur.

---

1. *But see Simpson v. Simpson,* 473 So.2d 299 (Fla.App. 3 Dist.1985) (division of property should be subject of separate probate proceeding brought by substituted party); *Segars v. Brooks,* 248 Ga. 427, 284 S.E.2d 13, 14 (1981) ("... no divorce means no equitable division of property").